GRIFFIN v. LONG.

Opinion delivered October 24, 1910.

1. PRINCIPAL AND SURETY—LIABILITY OF PRINCIPAL.—A principal is liable to indemnify his surety for any payment he may be compelled to make for his principal. (Page 271.)

2.  SAME—WHEN LIABILITY ACCRUES.—One who signs a note as surety
    for another becomes a creditor of the latter at the time he signs the
    note, and not at the time he pays the same.  (Page 271.).

3.  SAME—EFFECT OF SIGNING RENEWAL NOTE.—Where a surety signs a
    note with his principal in renewal of a former note executed by him,
    such renewal note does not witness a new indebtedness, and the lia-
    bility of the principal to such surety was contracted when the original
    note was executed.  (Page 271.)

4.  CORPORATIONS—DEFAULT OF OFFICERS—LIABILITY.—Under Kirby's Di-
    gest, § 859, fixing upon the president and secretary of any business
    corporation a liability for all debts of such corporation contracted
    during the period they neglected or refused to file the report of the
    corporation's financial condition, a note originally executed before
    but renewed during such period was not "contracted" during the pe-
    riod of default.  (Page 274.)

Appeal from Pulaski Circuit Court, Second Division;
F. Guy Fulk, Judge; affirmed.

Marshall & Coffman, for appellant; R. L. Rogers, of
counsel.

"The liability of the principal to indemnify his surety is a
debt contracted within the meaning of the statute, and arises
at the time when the surety signs the note," etc.   10 Cyc. 858.
A surety may secure the same debt several times in succession
when it is renewed by the debtor, but it is not his debt nor his
renewal, and each time he secures it he enters into a new con-
tract with his principal.

Rose, Hemingway, Cantrell & Loughborough, for appellee.

Where an indebtedness has been extended from time to
time by the execution of several renewal notes, the date of the
contracting of the debt relates back to the date when the first
note was executed.   If the first note was executed before any
annual report became due, or while the corporation was not in
default, then no cause of action against the officers accrued to
the payee of the note or to the surety thereon.   Thompson, Com.
Corp., par. 4222; 101 U. S. 188; 10 Cyc. 858; 106 Mass. 131;
16 Gray 142.   The giving of a note in renewal of a previous
note is not a payment of the first note, and does not create a new
indebtedness, in the absence of an agreement to that effect.
5 Ark. 569; 48 Ark. 267; 51 Ark. 300; 68 Ark. 233; 84 Ark. 220.

FRAUENTHAL, J.   This was an action instituted by a cred-
itor of a domestic corporation to recover judgment against its

president and secretary for his debt which he alleged was contracted during the period when the president and secretary neglected ·to ˙file the annual statement showing the condition of said corporation. In his complaint the plaintiff alleged that the Argenta Wholesale Cigar & Tobacco Company was duly organized as a corporation under the laws of the State of Arkansas on September 12, 1907, and that on December 17, 1907, the appellant and others as sureties for said corporation executed a note to the Twin City Bank for $500; that on April 4, 1908, the said note was taken up and renewed for the same amount by the corporation executing a note as principal with the appellant and the other said parties as sureties to the same payee with the date of maturity extended; that this note was taken up and renewed from ·time to time in the same manner until December 1, 1908, when the said corporation as principal and the appellant and the said other parties as sureties executed the last renewal note therefor to said payee due ninety days after its date. This note was not paid when due, and the payee instituted suit and recovered judgment thereon against said sureties on June 28, 1909, and on July 22, 1909, appellant paid thereon the sum of $183.85, for which sum he seeks by this suit a recovery against the president and secretary of said corporation. He alleged that by virtue of section 848 of Kirby's Digest it was the duty of said president and secretary of said corporation to file a report of the financial condition of said corporation on July 1, 1908, and not later than August 15, 1908, and that the said officials of·said corporation wholly failed to file said report, thereby rendering themselves liable for said debt of said corporation to appellant under section 859 of Kirby's Digest. The court sustained a demurrer to this complaint, and rendered judgment accordingly.

This was a suit to recover a debt of the principal due to his surety for what he had paid for such principal. The principal in this case was a corporation, and the action was brought to recover the debt from certain officers of said corporation. The action is founded upon the statutes of this State which provide that said officers of a corporation shall at stated times file reports of the financial condition of the corporation, and upon a failure or refusal to do so said officers shall jointly and severally be liable "for all debts of such corporation contracted during

the period of such neglect or refusal." Kirby's Digest, § § 848, 859. The material question involved in this case is: When, under the allegations of the complaint, was the debt due by the corporation to appellant, its surety, contracted? When one becomes surety for a principal, a liability arises upon the part of the principal to indemnify his surety .for any payment which he may be compelled to make for the principal. *Hill* v. *Wright,* 23 Ark. 530; *Rice* v. *Dorrian,* 57 Ark. 541. The principal thus becomes indebted to the surety for the payments he is compelled to make for the former, and the question which arises is, does such indebtedness have its inception from the time the party became surety or from the time payment is made by the surety? The true rule seems to be that the surety becomes a creditor of the principal at the time be signs the note as surety, and not at the time he pays the same. In the case of *Wiggin* v. *Flower,* 5 Rob. (La.) 406, it is said: "Though the obligation of a surety cannot be enforced till after the event on which it becomes absolute, it exists from the time it was contracted, so the rights of the surety against his principal exist before the obligation of the former becomes absolute."

In the case In re *Stout,* 106 Fed. 794, it is said: "The payment of a note by a surety relates back to the signing of the note for the purpose of fixing the date when the indebtedness of the principal to him on account of such payment had its inception." In *Rice* v. *Smithgate,* 16 Gray, 142, it was decided that "the liability of a principal to indemnify his surety for any payment that the latter may be compelled to make for the former takes effect from the time when the surety became responsible for the debt of his principal, and that upon payment by the surety his debt is a debt contracted at the time he became responsible and not at the time of such payment." See also *Byers* v. *Franklin Coal Co.,* 106 Mass. 131; *Loughridge* v. *Rowland,* 52 Miss. 456; *Berger* v. *Ewing,* 91 Mo. 397.

But it is urged by counsel for appellant that, while the liability of the corporation to appellant as his surety did not take effect on July 22, 1909, when he paid the surety debt, it did take effect on December 1, 1908, when said last renewal note was executed, and not on December 17, 1907, when the original note was given. As to the principal debtor, the rule of law is well settled that the execution of a note in renewal of a previous

note or debt is not a payment of such prior note or debt, nor the creation of a new indebtedness, unless there is an express agreement to that effect by the parties. *Real Estate Bank* v. *Rawdon,* 5 Ark. 569; *Henry* v. *Conley,* 48 Ark. 267; *Stull* v. *Harris,* 51 Ark. 300; *Triplett* v. *Mansur-Tebbets Implement Co.,* 68 Ark. 233; *Daniel* v. *Gordy,* 84 Ark. 218. But it is urged that this rule does not apply to the surety on a note that is renewed, although the renewal is executed by the same principal and surety, because the original debt is the debt of the principal, and not of the surety, so that it is the debt of the principal that is renewed, and not the debt of the surety. But a surety is bound to the same extent as his principal, and his undertaking is identical with that of the principal. "By signing the paper he enters into no new or different contract to the payee from that into which his principal has entered. Their obligation is generally contemporaneous and joint." Brandt on Suretyship and Guaranty (3 ed.) § 3. The liability of the surety to the payee is equal with that of his principal, and the only manner in which he can become discharged from that liability is by the actual payment of the debt or by an alteration of the contract or an extension of the time of payment of the debt founded upon a consideration and without his consent. Brandt on Suretyship & Guaranty, § 376; 32 Cyc. 191. But where the surety, at the time or before such extension of the time of payment of the debt is granted to the principal, consents thereto, he is not thereby discharged. Brandt on Suretyship & Guaranty, § 379; 32 Cyc. 159. When, therefore, a note or debt is renewed by the execution of a new note therefor, it is but an extension of the time of payment of such prior note or debt. And when the surety on such prior note executes such renewal note with the principal, he consents thereby to the extension of the time of the payment of such prior note. The original relation and liability of the surety is not changed by the execution of the renewal note thus signed and consented to by him. As to the surety thus executing the renewal note, the prior note for which the renewal note is given is not discharged, and by the execution of the renewal note a new indebtedness is not incurred, and a new relation as surety is not assumed. It is as to the surety simply an extension of the time of payment of the original note or debt, in the same manner and to the same extent as it is to

the principal, and a consent by such surety to such extension. We, therefore, conclude that the debt of the corporation to appellant, its surety, for the amount he paid for his principal was contracted at the date of the execution of the first note by the principal and surety, which was on December 17, 1907, and was not contracted at the date of the execution of any of the notes given in renewal of said first note. This debt or liability of the corporation, who was the principal on the note, to the appellant, its surety, was a "debt" within the meaning of section 859 of Kirby's Digest fixing upon the president and secretary of such corporation a liability "for all debts of such corporation contracted" during the period of any neglect or refusal to file the report of the financial condition of such corporation required by section 848 of Kirby's Digest. 10 Cyc. 858. But by this statutory provision the liability of such defaulting officers only extends to the debts contracted during the period of such default. As we have seen above, the giving of a note in renewal of a prior note or debt is not a payment of such prior note or debt. It does not constitute a new indebtedness. The time when such debt is contracted is not when the renewal note is executed, but when the original debt was made and the original note given. So that the liability of the defaulting officials of the corporation to its creditors under the above provisions of our statute is determined by whether or not such officers were in default at the time the original debt was made or the original note given to such creditor. The rule is well stated by Mr. Thompson in his Commentaries on Corporations, § 4222, as follows: "The principal question which relates distinctly to these statutory provisions, and which is not common to all statutes imposing a personal liability upon directors for official defaults, has reference to the time when the debt for which the director may be charged is deemed to accrue. If there has been a default in making the reports required by such statute during a particular year, and during that year a debt is contracted, and during a subsequent year, within which the directors are not in default in the making of their reports, a promissory note is given for the debt, it would seem that, for the purpose of relief afforded the creditor by the statute, the debt ought to be deemed to have accrued from its original inception, and not from the making of the note. And this is obviously the correct view. The reason

of the statute is to require corporations to make such a public showing of their affairs as will enable those dealing with them to determine whether they can safely give them credit; and the mischief at which it is aimed is not done unless the credit was actually given during the period of default. Moreover, this view conforms to the general doctrine of the courts that a promissory note given for an antecedent debt is not a payment of the debt, but merely an evidence of it—an additional security." See also *Steam-Engine Co.* v. *Hubbard*, 101 U. S. 188.

By the allegations of the complaint the original note was executed by the corporation as principal and by the appellant as one of its sureties on December 17, 1907, and all other notes executed by them were only in renewal thereof. The date of the debt thus contracted by the corporation to its surety was on December 17, 1907. But on that date the officers of the corporation were not in default by reason of a neglect or failure on their part to file the report of the financial condition of said corporation. The corporation was organized on September 12, 1907, and under said above statute (Kirby's Digest, § 848) such report was not required to be filed on or before December 17, 1907. It follows that the debt of the corporation to appellant, its surety, was contracted on December 17, 1907, and not during the period of any neglect or refusal on the part of the president and secretary of said corporation to file the report of its financial condition; and that the said officiels are not liable for such debt.

The judgment is accordingly affirmed.